UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FENGMEI LI,

    Plaintiff,

v.

RECELLULAR, INC.,

    Defendant.
    _____/

Case No. 09-cv-11363

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION
TO SET ASIDE DISMISSAL AND SETTLEMENT** (docket no. 53)

On December 4, 2009, pro se Plaintiff Fengmei Li ("Li") and Defendant ReCellular, Inc. ("ReCellular") filed a stipulation of dismissal with prejudice. Docket no. 50. On December 8, 2009, though not required to do so[1] but simply by request of the parties, the Court entered an order of dismissal with prejudice. Docket no. 52. Then, on December 11, 2009, unhappy with her settlement, Li filed a motion to set aside the dismissal and settlement and reopen her case. Docket no. 53. For the reasons stated below, the Court will deny Li's motion.

**STATEMENT OF FACTS**

In April 2009 Li filed this action for employment discrimination and retaliation against ReCellular, her former employer. On November 25, 2009, after nearly seven months of

---

[1] Rule 41(a)(1)(A)(ii) provides that the plaintiff may dismiss an action *without court order* by filing a stipulation of dismissal signed by all parties who have appeared in the action. Li filed, through counsel, a stipulation of dismissal signed by both ReCellular and Li, which is sufficient to dismiss the action without court order. *See Dillon-Barber v. Regents of Univ. of Mich.*, No. 99-2193, 2002 WL 31684697, **4 (6th Cir. Nov. 22, 2002) (citing *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997)) ("[A] properly stipulated dismissal under [former Rule 41(a)(1)(A)(ii)] is self-executing and does not require judicial approval...."); *see also* 9 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2363, at 448-50 (3d ed. 2008).

contentious discovery, counsel for ReCellular offered to settle the action. Li promptly rejected the offer. In the mean time, the Court appointed Kurt Koehler to represent Li on a pro bono basis. Koehler promptly contacted ReCellular and requested that Li's then-impending deposition be rescheduled while the parties further negotiated settling the case. ReCellular agreed.

ReCellular sent Koehler a proposed settlement agreement, along with a proposed stipulated order of dismissal with prejudice and information regarding prior settlement negotiations, and asked him to discuss the offer with Li. Li submitted a counter offer. After numerous offers and counteroffers, the parties agreed to meet in person on the morning of December 4, 2009 -- the day of Li's scheduled deposition -- to discuss a possible settlement. That morning at 8:24 a.m., Li fired Koehler and began negotiating with ReCellular without the assistance of counsel.

After the parties agreed to settle the case, they discussed possible changes to the language of the settlement agreement. Li requested changes to the agreement including: 1) removal of language indicating Li was receiving valuable and good consideration to which she was otherwise not entitled; 2) removal of language that the agreement could be used as the basis of a future injunction; 3) making mutual certain portions of the agreement, including the non-disparagement covenant; and 4) including an agreement to destroy confidential documents relating to the settlement. ReCellular agreed to these changes and incorporated them into the settlement documents.

Li agreed to change certain language in the settlement agreement to reflect that Li had voluntarily entered into the agreement without consulting legal counsel and that Li was fully advised as to the meaning and finality of the waiver and intended to be bound by it. After more negotiations, the parties agreed to the final terms and executed the settlement

documents, which included a settlement agreement and a stipulated order of dismissal with prejudice. Li agreed to place the terms of the settlement "on the record" using the court reporter originally hired to record Li's deposition. Li stated under oath that she understood an agreed to all of the settlement terms.

In the days following the settlement, Li sent numerous e-mails to ReCellular representatives complaining about the terms of the settlement. She mainly complained about the settlement amount and her own failure to have an attorney advise her about the agreement before signing it. Li complained that the settlement amount was not sufficient to release her from her financial troubles. ReCellular responded that it would not increase the settlement amount, but offered to subsidize a portion of any future credit counseling.

Li then filed the instant motion to set aside the dismissal and settlement. Li asserts four grounds for setting the settlement aside: 1) she did not consult with an attorney before signing the agreement; 2) she did not have a clear head during settlement negotiations due to the prescription drugs she was taking; 3) the settlement does not provide her with enough money to avoid foreclosure on her home; and 4) the non-disparagement clause was moved into a separate agreement. ReCellular seeks costs and fees incurred in having to respond to the motion.

## DISCUSSION

Li's motion and ReCellular's response present two primary issues. The first is whether Li is entitled to have the settlement and dismissal set aside. The second is whether ReCellular, if successful in opposing Li's motion, is entitled to reimbursement from Li for the fees and costs it incurred in having to respond to her motion. The Court's conclusion with respect to both issues is no.

I. <u>Is Li Entitled to Have the Settlement and Dismissal Set Aside?</u>

The Court first addresses whether Li may set aside the settlement and dismissal. The Court begins with Li's request to set aside the settlement agreement and finds that it lacks jurisdiction to set aside the settlement agreement itself.

Neither the Federal Rules of Civil Procedure nor the doctrine of ancillary jurisdiction provide a district court with jurisdiction to enforce a settlement agreement simply because the agreement arises out of a matter over which a court once had subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). Rather, a party must assert an independent basis of jurisdiction to permit a federal court to enforce a settlement agreement. *Id.* at 378. Li has not alleged an independent basis of jurisdiction.

Although *Kokkonen* involved a party seeking to *enforce* a settlement agreement in the face of an alleged breach of that agreement, the Court finds that principles of *Kokkonen* apply here, where Li asks the Court to *vacate* the settlement agreement. That is, without an independent basis of jurisdiction to consider the settlement agreement in the first place, the Court lacks jurisdiction over it and cannot, for that reason, set it aside. If Li wants to file an action for rescission or seek similar relief in state court, she may do so, but this Court has no jurisdiction to consider such a request here, where the underlying action has been dismissed, thereby terminating the Court's jurisdiction.

The Court next considers whether to set aside the "dismissal." Problematically, there are two separate "dismissals" in the case and it is not clear to which Li is referring in her moving papers. The first is the stipulation of dismissal signed by Li and counsel for ReCellular. Docket no. 50. The second is the stipulated order of dismissal entered by the Court on December 8, 2009. Docket no. 52.

In the Court's view, Li's attempt to set aside the *order* of dismissal is in vain because the order itself was superfluous, unnecessary and only entered upon request of the parties. As discussed above in note 1, a stipulation of dismissal under Rule 41(a)(1)(A)(ii) is self-executing and dismisses the case upon filing, without requiring judicial approval. Once the stipulation signed by all parties was filed on December 4, 2009,[2] the action was automatically dismissed and the Court's jurisdiction over the matter terminated. *See Dillon-Barber v. Regents of Univ. of Mich.*, No. 99-2193, 2002 WL 31684697, **4 (6th Cir. Nov. 22, 2002) ("We hold that the district court lacked jurisdiction to dismiss with prejudice those claims that had previously been dismissed without prejudice by stipulation of the parties."); *see also Garber v. Chicago Mercantile Exch.*, 570 F.3d 1361, 1364-65 (Fed. Cir. 2009) (finding void for lack of jurisdiction district court's order dismissing action with prejudice entered after plaintiff filed stipulation of dismissal *without* prejudice signed by all parties); *cf. Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 541 (6th Cir. 2001) ("[Plaintiff's] unilateral notice was the legally operative act of dismissal pursuant to Rule 41(a)(1)(i), making the district court's subsequent order to the same effect superfluous."). Therefore, the Court will not consider whether to set aside the order of dismissal.

The Court turns to the *stipulation* of dismissal and the question of whether Li is entitled to have it set aside. As discussed above, under Rule 41(a)(1)A)(ii), a stipulation of dismissal signed by all parties who have appeared is self-executing and does not require

---

[2] The stipulation was signed by ReCellular's counsel, Melvin Muskovitz, and Li. It was not signed by Li's former counsel. It was Li's signature, however, and not that of counsel, which was required to voluntarily dismiss the case under Rule 41. Li fired her attorney the morning of December 4, 2009, before the parties engaged in settlement negotiations. *See* Docket no. 51 (granting Li's request, through Koehler, that Koehler withdraw from the case effective December 4, 2009 at 8:24 a.m.). At the time Li signed the stipulation, she was acting pro se. Accordingly, the stipulation was "signed by all parties who ha[d] appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii).

the Court to approve the dismissal to make it legally operative. The Sixth Circuit has found that in determining whether a stipulation has been signed by all parties, courts may look to the real "parties in interest," and beyond those named in the case caption. *Green v. Nevers*, 111 F.3d 1295, 1300 (6th Cir. 1997), *cert. denied*, 522 U.S. 996 (1997). Additionally, a court exercising its inherent power may decline to allow voluntary dismissal of claims in order to safeguard the interests of parties entitled to the court's special protection, and may "look behind" a stipulation to determine whether there is collusion or other improper conduct giving rise to a dismissal. *Id.* at 1301.

These rare and highly unusual[3] "exceptions" to the self-executing nature of stipulations of dismissal simply do not apply in the present case. There are no parties in interest other than those named in the case caption, and both of those parties signed the stipulation of dismissal. *See* docket no. 50.

With respect to the power of a court to "look behind" a stipulation of dismissal, the circumstances in *Green* allowing such judicial oversight were extraordinary and the trial court in *Green* was in essence *required* to relieve the moving party from the dismissal. The *Green* case involved a wrongful death action governed by state law and the issue was whether named parties had properly signed and filed a stipulation of dismissal. The stipulation was not signed by the attorney who represented a minor that was entitled to share in any potential judgment or settlement ultimately achieved in the case. *Id.* at 1301. The *Green* court relied on its duty to make an independent determination that the

---

[3] The Court has been unable to find any cases that apply the exception set forth in *Green v. Nevers* to set aside a stipulation of dismissal. Most cases citing *Green* in the Rule 41 context do so for the proposition that a properly submitted dismissal under Rule 41(a)(1)(A)(ii) is self-executing and does not require judicial approval. *See, e.g., Hoyle v. Baeppler*, No. 07-3937, 2008 WL 2337852, **2 (6th Cir. June 5, 2008); *Dillon-Barber,* 2002 WL 31684697, **4.

settlement was in the best interests of the minor child. *Id.* The court also relied on the fact that applicable state law required any settlement to be approved by the trial court to protect the interests of the individual claimants. *Id.* (citing Mich. Comp. Laws § 600.2922(5)). Finally, two attorneys for minor claimants in *Green* expressly objected to the stipulation of dismissal. *Id.*

No extraordinary circumstances close to those in *Green* even approach being present in this case. The simple fact that Li is pro se plaintiff does not require the Court to intervene on her behalf in this instance. *See Leaphart v. Turner*, No. 08-13584, 2008 WL 4792030, *2 (E.D. Mich. Oct. 23, 2008) ("There is no evidence in the record to suggest that [a pro se plaintiff] is under any form of legal disability, or that he is not fully cognizant of the significance of the Voluntary Dismissal. In the absence of such evidence, there is no basis upon which this court should preclude the dismissal.") (recognizing *Green*, 111 F.3d 1295).

There is one additional exception to the finality of a Rule 41 stipulation of dismissal that might permit Li relief in this case. In *Warfield v. AlliedSignal TBS Holdings, Inc.*, a panel of the Sixth Circuit recognized that a dismissal under Rule 41(a)(1) that is not truly voluntary may, under limited circumstances, be set aside under Fed. R. Civ. P. 60(b). 267 F.3d 538, 542 (6th Cir. 2001). The panel recognized that Rule 60(b) "gives the courts discretion to set aside a voluntary dismissal with prejudice if the dismissal was not " 'free, calculated, and deliberate.'" *Id.* (quoting *Randall v. Merrill Lynch*, 820 F.2d 1317, 1321 (D.C. Cir.1987)). To render a dismissal involuntary, a court must find that a defendant created coercive conditions that negated a plaintiff's ability to make a free choice in the matter. *Id.* Although Li does not cite or even mention Rule 60(b) in any of her filings, the

7

Court interprets Li's motion as one to set aside the stipulation of dismissal under Fed. R. Civ. P. 60(b) and will consider it accordingly.[4]

Fed. R. Civ. P. 60(b) sets forth the criteria for determining whether relief from a federal court's order is permitted:

> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> ...
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation. Accordingly, the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (internal quotation and citations omitted); *cf. Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (stating that a movant seeking relief under Rule 60(b)(6) must show "extraordinary circumstances" justifying the reopening of a final judgment).

In her motion, Li raises four complaints regarding the circumstances surrounding the settlement and dismissal: 1) she did not consult with an attorney before signing the agreement; 2) she did not have a clear head during settlement negotiations due to the prescription drugs she was taking; 3) the settlement does not provide her with enough money to avoid foreclosure on her home; and 4) the non-disparagement clause was moved

---

[4] As a pro se plaintiff, Li is "is accorded a measure of leniency to assure that meritorious claims will not be dismissed for inartful draftmanship." *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983). This does not mean, however, that Li is "entitled to a more lenient application of *substantive* law." *Id.* (emphasis in original). While Li's motion to set aside the dismissal and settlement cites no authority supporting her request, the Court will nevertheless consider her motion as one seeking relief from the stipulation of dismissal under Fed R. Civ. P. 60(b).

8

into a separate agreement. The Court will consider each of these arguments insofar as they bear on the voluntariness of Li's stipulation of dismissal.

General contract principles governing settlement agreements -- and the stipulations of dismissal they produce -- are a type of contract, and whether they are contractually valid is determined by reference to state substantive law governing contracts generally. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *Walbridge Aldinger Co. v. Walcon Corp*, 207 Mich. App. 566, 571 (1994) ("An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts."). Although not binding on federal courts considering Rule 60(b) motions, the Court here looks to Michigan contract law as instructive to determine whether Li's choice to dismiss her claims was "free, calculated, and deliberate." *Warfield*, 267 F.3d at 542.

Under Michigan law, it is presumed that a plaintiff executes a settlement agreement and release knowingly, and the plaintiff has the burden of proving otherwise. *Stefanac v. Cranbrook Educ. Cmty.*, 435 Mich. 155, 164-65 (1990). Li first claims the dismissal should be set aside because she did not consult with an attorney before signing the settlement agreement. This claim lacks merit. The Court is aware of no authority for the proposition that failure to consult an attorney before entering into a contract makes the contract presumptively invalid. In fact, courts have expressly stated that "there is no requirement that one be represented by independent counsel before committing to a binding contract." *Reed v. Reed*, 265 Mich. App. 131, 149 (2005); *see also Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1556 (E.D. Mich. 1991) ("In Michigan, an individual can settle a claim without the assistance of counsel.") (citing Michigan law)). Accordingly, Li's claim that her stipulation was involuntary due to lack of counsel fails as a matter of law.

9

Also, as a matter of fact, Li's claim that she lacked counsel when she negotiated the settlement is not entirely accurate. Through its pro bono committee the Court appointed counsel for Li. Up until a half-hour before negotiations began, Li's pro bono counsel was present at ReCellular's office and prepared to negotiate a settlement or defend her in her deposition, which was, by court order, to be completed that day. Def. Br. at 6. Before the meeting, Li emailed counsel for ReCellular and stated "Kurt [pro bono counsel] is out. I don't want him to be my attorney anymore." *Id.* As requested by Li, her former counsel -- Koehler -- left before she arrived. Li voluntarily chose to fire her pro bono counsel and voluntarily chose to negotiate a settlement without counsel. She cannot now complain that she lacked counsel in negotiations after the Court appointed her counsel. Accordingly, she has not demonstrated, as a factual matter, that lack of counsel rendered involuntary her settlement and voluntary dismissal.

Li next argues that the dismissal should be set aside because she was in a "very bad mood" and lacked a clear head during settlement negotiations due to the prescription drugs she was taking at the time. Pl. Mot. at 2. The Court is not persuaded by this argument. Li's argument raises the issue of her mental capacity to contract. Under Michigan law, the test of mental capacity to contract is whether the person in question "possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged." *In re Estate of Erickson*, 202 Mich. App. 329, 332 (1993). To avoid an executed contract on the basis of lack of capacity, "it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that the person had no reasonable perception of the nature or terms of the contract" *Id.* This is an extremely high burden in the Court's view and Li does not meet it here.

The Court finds that Li was of sound mind and sane at the time she signed the agreement and the dismissal. She has not come close to demonstrating otherwise. The record demonstrates that she had a "reasonable perception" of the nature or terms of the settlement, including the stipulation of dismissal. She negotiated multiple changes to the settlement agreement including: 1) removal of language indicating Li was receiving valuable and good consideration for which she was not entitled to; 2) removal of language that the agreement could be used as the basis of an injunction; 3) making reciprocal certain portions of the agreement, including the non-disparagement covenant; and 4) an agreement to destroy confidential documents relating to the settlement. Def. Resp. Br. at 7. These facts, considered in light of the surrounding circumstances, demonstrate that Li was of sound mind and fully understood the nature and terms of the settlement and stipulation of dismissal.

Li next argues that the dismissal should be set aside because the settlement did not provide her with enough money to avoid foreclosure on her home. The Court is not persuaded by this argument. Under Michigan law, "settlement agreements should not normally be set aside and [ ] once a settlement agreement is reached a party cannot disavow it merely because he has had 'a change of heart.' " *Green v. BP Prods. of N. Am., Inc.*, Nos. 04-2260 & 05-1317, 2006 WL 452334, **3 (6th Cir. Feb. 23, 2006) (quoting *Metro. Life Ins. Co. v. Goolsby*, 165 Mich. App. 126, 128 (1987)). It appears that Li is suffering from a case of buyer's remorse, but Rule 60(b) was not intended to address such matters. The Rule is calculated to relieve from judgment or court order those parties whose compliance therewith would constitute a miscarriage of justice. Obtaining insufficient money in a settlement is not within the parameters of the Rule.

Finally, the court is not persuaded by Li's argument that she is somehow entitled to relief because the non-disparagement clause was moved into a separate agreement. The non-disparagement agreement was part of the entire settlement agreement and the fact that it was executed in a separate agreement is not at all relevant to a Rule 60(b) analysis. The separate agreement, like the settlement agreement itself, meets the essential elements of a contract and Li has not demonstrated otherwise. *See Thomas v. Leja*, 187 Mich. App. 418, 422 (1991) (setting forth requirements of valid contract under Michigan law). The fact that the non-disparagement agreement was placed in a separate document and signed by the parties makes it no less binding on both of the parties and it does not undermine the validity of the overall settlement.

Finally, as an issue raised only and for the first time in her reply brief, Li alleges that the settlement and dismissal should be set aside because of fraud on the part of her pro bono counsel. She alleges that her attorney, while negotiating a settlement with ReCellular, was actually acting for the benefit of ReCellular. Pl. Reply at 2. As an initial matter, Li has waived her claim of fraud by raising it for the first time in a reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Even if she had not waived this argument, and even if fraud by one's own counsel were a proper basis for relief under Rule 60(b)(3), which provision, by its terms, provides for relief in an instance of fraud by an *opposing* party, the Court would not relieve Li of her stipulation of dismissal. Her claim of fraud on the part of her counsel is meritless and completely unsupported by anything in the record.

In sum, Li has not demonstrated she is entitled, under Rule 60(b), to relief from the stipulation of dismissal. Li's decision to voluntarily dismiss her claims against ReCellular was voluntary and she entered into the settlement with her eyes open. She has not

demonstrated the existence of any fraud which prompted her to sign the stipulation of dismissal. Additionally, there is no "other reason" that justifies relief here. *See* Rule 60(b)(6). This is not an "unusual and extreme situation" in which the "principles of equity *mandate* relief." *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (emphasis in original). Li simply entered into a binding settlement with ReCellular and later became unhappy with it. The Court will deny Li's motion.

II.   May ReCellular recover its costs and fees?

ReCellular requests that Li be required to pay ReCellular's costs and fees incurred in responding to her motion. 28 U.S.C. § 1927 permits the Court to require an "attorney or other person admitted to conduct cases in any [U.S.] court" who "so multiplies the proceedings in any case unreasonably and vexatiously" to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. The statute's language, referring to an "attorney or other person admitted to conduct cases in any [U.S.] court," suggests the statute does not apply to non-lawyer pro se litigants since they are not "attorneys" or "admitted" to conduct cases in court.

Although the Sixth Circuit has not squarely addressed the issue, language in a recent decision focusing on a court's power to sanction attorneys indicates that the Sixth Circuit would likely join other circuits in holding that non-lawyer pro se litigants cannot be ordered to cover an opponent's costs and fees under section 1927. In *Rentz v. Dynasty Apparel Indus., Inc.*, a panel of the Sixth Circuit recognized in dicta that the term "attorney or other person admitted to conduct cases in any [U.S.] court" did not apply to a represented party or a law firm. 556 F.3d 389, 395-96 n. 6 (6th Cir. 2009). The panel narrowly construed the statute there and confined it to *attorneys*, and not law firms or parties. This approach

suggests the Sixth Circuit would likewise preclude sanctions against a pro se litigant like Li, who is neither an attorney, nor admitted to practice law before a court.[5]

The Sixth Circuit's standard for section 1927 sanctions -- limiting sanctionable conduct to conduct that "falls short of the obligations owed by a *member of the bar to the court* and which, as a result, causes additional expense to the opposing party" -- also demonstrates that the concern under section 1927 is with *attorney* conduct. *Id.* at 396 (emphasis added).

Other circuits have concluded that a court may not award fees against pro se litigants under 28 U.S.C. § 1927. *See, e.g., Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992); *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996); *Balcar v. Bell and Assocs. LLC*, 295 F. Supp. 2d 635, 640 (N.D.W. Va. 2003), *but see Wages v. IRS*, 915 F.2d 1230, 1235-36 (9th Cir. 1990). This conclusion results from the congressional intent gleaned from the statute's employment of the language "attorney or other person admitted to conduct cases in any court," which implies that it is unlikely that Congress intended the phrase "other person" to include "a person lacking lawyer-like

---

[5] *See also Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002). In *Tropf*, the Sixth Circuit upheld a sanction award against an attorney and the represented party under Fed. R. Civ. P. 11 and 28 U.S.C. § 1919, which allows a court to award "just costs" when an action is dismissed for lack of jurisdiction. After upholding the sanction, the panel stated the following in footnote 17:

> The district court also could have required *Tropfs' attorney* personally to pay any excess costs, expenses or attorneys' fees incurred by the defendants because of conduct that 'multiplie[d] the proceedings in [the] case unreasonably and vexatiously. 28 U.S.C. § 1927. However, because Rule 11 adequately provides for the attorneys costs and fees in this case, we need not address § 1927.

*Id.* n. 17 (emphasis added). The panel's disinclination to authorize sections of the Tropf's themselves, in addition to their attorney, under section 1927 further supports the Court's contention that the Sixth Circuit, if presented squarely with the issue, would likely hold that section 1927 applies only to attorneys or "other admitted persons," and not non-lawyer pro se litigants.

credentials." *Sassower*, 973 F.2d at 80. The Second Circuit in *Sassower* also reached its conclusion based on its reading of *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), in which the Supreme Court "recounted, without disagreement, a District Court's assertion that section 1927 'applies only to attorneys.' " *Id.* (quoting *Chambers*, 501 U.S. at 41-42).

Given the Sixth Circuit's recent statements and its articulation of the standard for sanctionable conduct, as well as the persuasive opinions of other circuits concluding that section 1927 is reserved for attorneys, the Court agrees that non-lawyer pro se litigants cannot be sanctioned under 28 U.S.C. § 1927. The Court will deny ReCellular's request for reimbursement for costs in responding to Li's motion.

Even if section 1927 could apply to someone like Li, the Court would decline to sanction her since her conduct does not rise to a sanctionable level. ReCellular has not demonstrated that Li acted in bad faith in filing her motion, or that Li knew or reasonably should have known that her motion was frivolous. *See Rentz*, 556 F.3d at 396 ("An attorney is . . . sanctionable under § 1927 without a finding of bad faith, at least when an attorney knows or reasonably should know that a claim pursued is frivolous") (internal quotation marks omitted). Therefore, even were Li sanctionable under 28 U.S.C. §1927, the Court would not sanction her. Likewise, because ReCellular has not shown bad faith on the part of Li, the Court will not sanction her using its inherent power. *See Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003) ("The imposition of inherent power sanctions requires a finding of bad faith or conduct tantamount to bad faith.") (internal quotation marks and citations omitted).

## CONCLUSION AND ORDER

Li's motion to set aside the settlement and dismissal will be denied because she has not demonstrated an entitlement to relief under Rule 60(b). The Court will also deny ReCellular's request for sanctions.

**WHEREFORE** it is hereby **ORDERED** that Li's Motion to set Aside the Dismissal and Settlement (docket no. 53) is **DENIED**.

**IT IS FURTHER ORDERED** that ReCellular's request for costs and attorneys' fees incurred in responding to Li's motion, asked for in its response brief, is **DENIED.**

**SO ORDERED.**

          s/Stephen J. Murphy, III
          STEPHEN J. MURPHY, III
          United States District Judge

Dated: April 16, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 16, 2010, by electronic and/or ordinary mail.

          Alissa Greer
          Case Manager